Case No. 19-5238, Electronic Privacy Information Center Appellant v. Drone Advisory Committee et al. Mr. Davison for the appellant, Mr. Busa for the appellees. Mr. Davison, good morning. Good morning, Your Honor. Your Honors, as this Court has said, the Federal Advisory Committee Act was enacted to open to public scrutiny the manner in which government agencies obtain advice from private individuals. The question at the heart of this case is whether the FAA and the Drone Advisory Committee can avoid the public scrutiny required by the FACA simply by relying on advisory subcommittees to develop policy recommendations, subcommittees that in this case were created, managed, and used by FAA administrators. The answer to that question is no for three reasons. First, the records of the DAC subgroups are by definition the records of the committee and are therefore covered by the DAC's obligation to publish its own records. Second, even if advisory committees were not obligated to disclose subgroup records, the subcommittees in this case also independently qualify as advisory committees. Third, the direct, personal, and sustained role of FAA administrators in the management and proceedings of the DAC subgroups leaves little doubt that the subgroups were established and utilized by the agency. To the first point that I raised, that the records of the subcommittees are inherently the records of the committee, it is irrelevant that the records in dispute in this case were made available to or prepared for or by particular subunits of the DAC. The FAC does not place them in a separate category beyond the reach of the DAC Section 10b Disclosure Obligations. Can I clarify what's at issue here? The government says in their brief at page 31 that to the extent that any records of these subgroups were made available to the DAC or prepared for the DAC, those are disclosable. They concede that because that falls within the plain language of the statute. And they say that those records have been produced. And they cite to the final order at JA 41. And I think I read your reply brief as agreeing that any such records have been produced. Am I correct? Not entirely, Your Honor. The distinction, the term drone advisory committee is being used, I think, in our briefs in two different ways. We understand drone advisory committee to constitute the institution of the committee that includes the parent committee and the subgroups and the subcommittee. They are using that term to describe only the parent committee. So while it is true that It's for the purpose of my question. Yes, Your Honor. The parent committee, the drone advisory committee, any records that were made available to that parent committee or prepared for that parent committee by any of the subgroups, have those been produced to you? Yes, Your Honor. Those are the records that were produced below. Okay. So that's not at issue. It's anything in the subgroups, Any records in the subgroups that were not made available to the parent committee or were not prepared for the parent committee, those are the records that you were seeking? Yes, Your Honor. It is our contention that because those subgroups, the subcommittee and task groups are part of the whole drone advisory committee, records made available to or prepared for or by those entities were also, by definition, made available to or prepared for or by the committee as a whole. And why should we include that, given that the statute has that language in there? I mean, you're effectively reading that language out of the statute if we rule for you, aren't we? The language being prepared for or by? Yes. No, Your Honor. I think, again, it comes back to a difference in understanding about what the committee is. Is the committee simply the parent committee or does the committee encompass all of the constituent parts of the committee? And we are arguing the latter. And we think that this is consistent with the plain text of the statute and with the GSA regulations that implement the statute. I'm sorry. How is this theory consistent with another feature of the statute, which is that subcommittee can be an advisory committee but only if it meets the definition, the statutory definition? Yes, Your Honor. So we think the explanation for that is reflected in the GSA regulations, and those regulations allow that subcommittee meetings may be disclosed more readily than committee meetings. So if a subcommittee independently qualifies as a committee, both its meetings and its records would, by the statute, be required to be open to the public, whereas subcommittees that have records that are made available to or prepared for or by those subcommittees, those are, again, by definition the records of the committee. So regardless of whether the individual subgroups are themselves advisory committees, their records would be available to the public and attendee. But I don't see how the statutory structure can support that distinction because the obligation to hold public meetings and the obligation to make records available are legal consequences that flow from being an advisory committee. And the question of who is an advisory committee is answered by the definitional provision in Section 2. So either subcommittee is an advisory committee or not, and if they are, they have all of the obligations, and if they're not, they don't. Yes, Your Honor. So as to the first part of our argument, that the records of the subcommittees are inherently the records of the parent committee, we are relying on the obligations of the DAC, the parent, the organization of the DAC, the parent committee, to disclose its records. And our point is that that category of records includes the records of its subparts. We're not talking about obligations that are specific to subcommittees, but what the statute reflects is that if a subcommittee meets that definitional language of a committee, it then accrues all of the obligations that would typically accrue to an advisory committee. So it therefore has to open its meetings. It has an independent obligation to disclose its records. But in that first section of our argument, what we're talking about is the obligation of the DAC to disclose all of its records, and we're contending that that includes the category of records provided to the committee through its subgroups. So turning to the second prong of our argument, that the subgroups in this case are themselves advisory committees, we contend that EPIC's complaint plausibly alleges that the FAA established, utilized, and received advice from the DAC subgroups. The government responds that the DAC reviewed and revised some recommendations from the DAC subgroups, but this argument fails in two ways. First, it does not matter that in the government's view the facts of EPIC's complaints are susceptible to an alternate interpretation. At the motion to dismiss stage, EPIC need only state a plausible claim to relief. And second, EPIC need not demonstrate that the advice developed by the DAC subgroups always passed directly from the subgroups to the FAA. It is enough that the subgroups were established or utilized by the FAA, or alternatively by the quasi-public to an advisory committee, in the interest of obtaining advice or recommendations for the agency. Why doesn't the Anti-Hunger Coalition answer this question? The district court in that case pretty clearly said that the test is whether or not the advice flows directly from the subgroup to the government entity. And that's not disputed here. On the face of the organic documents, the advice can't flow that way, and I don't think you're making an argument that they're violating their own charter. So why isn't that? And we adopted that reasoning on appeal in National Anti-Hunger. Why isn't that the end of this? Several points, Your Honor. The first is that we do in fact contend that because FAA administrators, the head of the agency and the deputy administrator, were serving as the designated federal officers, they were present in the meetings of subgroup and subcommittees, and they were present at the meetings of the parent committee. In all of those contexts, the subcommittee and subgroups were developing recommendations and advice and delivering them before they had been filtered by the publicly accountable parent committee. So advice was indeed flowing directly from those bodies to the FAA through the person of the FAA administrator or deputy administrator. But to the point about National Anti-Hunger Coalition, it was undisputed in that case that the parent committee rather than the president had established the task forces, and it was also undisputed, at least in the district court, that the task forces did not directly advise the president. Here, by contrast, as I said, we plausibly allege that the FAA both established and utilized and was advised by the subgroups. I think the distinction is clear if you consider Anti-Hunger Coalition. So had the president or the chief of staff in that case served as the designated federal officer and sat in on the meetings of the task forces, I expect the court would have had no trouble deciding that the president or the chief of staff were directly advised by those task forces. And that's really the scenario here, except that it's the administrator or deputy administrator of the FAA who's sitting in on those meetings. And one final point. If I understand your argument correctly, counsel, it is that I guess in the context of arguing that the FAA utilized these subgroups directly, you're essentially saying that the statute says that the advice or recommendations can flow either to the president or an agency or an officer of the federal government, and that the DFO was always an officer of the federal government. And so in that sense, the advice and recommendations were flowing to an officer of the federal government within the meaning of the statute. Is that your argument? We don't go so far as to argue that the simple appointment of a designated federal officer means that advice is flowing. But we think on the facts of this case, because that designated federal officer, among the 40,000 employees of the FAA, the agency chose two people in particular, the deputy administrator and later the administrator, to serve as the designated federal officer that sat in on those meetings and that directly managed and controlled the process, the meetings, the agendas, the selection of membership and so forth. In this case, that is enough to support the inference that advice flowed from those DACS subgroups. Why should we look past formal structure? I mean, if a board member of a parent corporation sat on the board of a subsidiary corporation, we wouldn't say that when he was wearing his second hat, he was acting for the parent and used that as a justification for breaching of corporate formality. It seems perfectly sensible that, and of course the agency wants someone who has supervisory authority or subject on which the advisory committee is providing advice to be involved in the advisory committee or be involved in the subgroups. The more typical way that an advisory committee is managed by an agency is through a civil servant who serves as the designated federal officer. And they are accountable actually to an intermediate agency employee, the committee management officer. That's the typical configuration. Here we have the FAA selecting, again, the head of the agency to sit in on those meetings, to be the person that personally manages the subcommittee and the subgroup process. And I think it's distinguishable from the situation you're describing with two different corporations because the drone advisory committee is a committee that the FAA set up to obtain advice for its policymaking role on drones and drone privacy and the various roles of federal, state, and local governments in regulating use of drones. And so it's the role of the FAA administrator as a designated federal officer is really inseparable from the role of the head of the agency who is ultimately receiving the final work product of this committee. I understand that, but what you're effectively saying is that that person can't wear two hats, one being the recipient of the advice as the agency head and one being the presider over the subgroup as the presider over the subgroup. And that's not obvious to me. No, Your Honor. We're not saying that the same person can't serve those two roles. We're saying that if they do, and this is the only, by the way, only case that we are aware of where that was true, but if the same person does serve in both roles, that converts what would otherwise be a subcommittee into a committee because that candid development of advice and delivery of advice and so forth is happening in the physical presence of the head of the agency. So they are privy to all of what goes on in those subgroups and subcommittees, and yet the public is not able to access that as the FACA would require. Thank you. All right. Any more questions? All right. We'll hear from Mr. Busa. Good morning, and may it please the Court. Joe Busa on behalf of the government. The Federal Advisory Committee Act does not give plaintiffs what it seeks here. The subsidiary staffing groups at issue were not advisory committees in their own right, and thus there is no right to access records made available to or prepared for or by those entities, nor does FACA require treating these records counterfactually as if they had actually been prepared for the General Advisory Committee when they were not. I don't have an interest in giving a lengthy opening statement, but I'm very happy to take whatever questions the Court might have. I thought I might jump directly to… Can we just start with the point that your friend just made, which is if the agency chooses to embed in the subgroup someone like an agency head, that is at least a somewhat distinctive factor tending to support treating advice in some sense as flowing from the subgroup to the agency directly. I'm happy to address that, Your Honor. And the bottom line is that that makes no difference here. Factually, I just want to point out that the person we're talking about, the designated federal officer, was the deputy administrator. That person, Mr. Elwell, was later elevated to acting administrator just before the final meeting of the General Advisory Committee. So we're really talking about the appointment of the deputy administrator here to serve as that designated federal officer. And the reason that person served in that role was because of the wide-ranging issues that would be at issue here before the advisory committee. Those issues cut across basically all of the lines of business at the Federal Aviation Administration. And so it makes sense for a higher-level official with a similarly broad view to sit as a designated federal officer in order to offer information to these… Was that individual an officer of the federal government? Yes. I think there's no doubt that the deputy administrator is an officer of the agency. The reason it makes sense to have someone with that broad view sit here is because of the wide-ranging issues that are sort of at issue here. And, you know, a lower-level officer within one silo within FAA might not have been as useful to the Joint Advisory Committee in offering information. Also, the statute specifically says that an advisory committee defines an advisory committee to include a committee or subcommittee or subgroup that is providing advice or recommendations to not just an agency of the federal government but an officer of the federal government. If you place an officer of the federal government on that subcommittee or on the advisory committee that is receiving recommendations from the subgroup, why isn't that plainly within the terms of the statute? Oh, Your Honor, because there's no indication and no allegation at all that this person was receiving advice in their capacity as a designated federal officer. So just to drive that home, this designated federal officer has to sit on all meetings of the advisory committee. So here, that's the drone advisory committee. On plaintiff theory, I take it, any subsidiary group making presentations of draft recommendations to the drone advisory committee would automatically be converted into an advisory committee merely by dint of the fact of making presentations to the parent committee on which this federal officer sits. But of course, there will always be a designated federal officer, the language from the statute, on any advisory committee. But a designated federal officer isn't an officer of the federal government. Your Honor, I don't think the statute... You chose to put an officer of the federal government on as the DFO. You didn't have to make that choice. I think that's right, but I think it's well within the agency's discretion to have done so, and it's salutary. Again, here, we're talking about wide-ranging, important issues. There's no one saying that there's anything wrong with you doing it, counsel. Well, I guess the question is, if the agency does that and proceeds in that fashion, then there's consequences, and one of the consequences then is that a subgroup of the advisory committee is going to be treated as an advisory committee as well. Why isn't that the correct way to read the statute? Well, I think it goes back to what I believe Judge Katsas was mentioning with my friend on the other side, which is this idea that anyone, whether a senior officer or a lower-level designated federal officer, could wear two hats in this capacity. You could, in that role, conceive of yourself as receiving advice and bringing it back to the agency, or you could conceive of yourself as merely serving as the DFO, the person who's going to answer any questions that these advisors might have and guide the process, but not be receiving advice. And here, I think it bears pointing out that all of the allegations about the mere presence of this person at the meetings of the Joint Advisory Committee, that's at page 51 and 53 of the Joint Appendix. And there's no allegation that this person was receiving that advice in draft form, taking it out of the advice, taking it back to the agency, making decisions on the basis of that advice, and then running a sham process by which they sort of waited for the Joint Advisory Committee to say whatever it was going to say, but meanwhile intending to ignore all of that because the person thinks, well, I've already received the advice I set out to receive. All of the allegations are to the contrary. All of the formal documents establishing the structure of this committee show that the advice would come from the Joint Advisory Committee itself. The key documents are pages 72 to 73 of the Joint Appendix and 102 to 104 of the Joint Appendix. Those are the terms of reference. And then there's also in the record at page 128 of the Joint Appendix, there's committee meeting minutes showing that this deputy administrator understood and expressly stated on the record that the advice would come from the final decisions of the Advisory Committee. You know, this person, in sitting as the designated federal officer, was not taking the draft recommendations from the subsidiary groups as if they were recommendations. Again, that's all attached to plaintiff's own complaint. Their argument turns on this notion that the mere presence of this person should be deemed as, you know, contrary to the presumption of regularity, as if this person were taking the advice, the draft recommendations, taking that as final advice, and then going through a sham process in the Joint Advisory Committee. But again, there's no allegations supporting that at all. And so that's why... Sorry. But it's a little too facile to say that the situation we have here with a federal officer embedded in the subcommittee is the same as the situation where the federal officer is embedded in the Advisory Committee itself, which, of course, he has to be by statute, right? Because if you're focused on the officer on the Advisory Committee, that person is getting from the subgroups only the information that the subgroups pass up to the Advisory Committee, at which point all of those records become Advisory Committee records. But if you're focused on the agency official embedded in the subgroups, right, that person is privy to all of the deliberations and documents and everything else that don't make it up to the Advisory Committee. It seems like the case on the other side is at least stronger when you're embedding the officer in the subcommittee. Your Honor, there has to be a designated federal officer even in these subcommittees, not as a matter of the FACA, because, again, the FACA doesn't apply to those committees. It's a policy choice that the General Services Administration made. It's in the GSA reg, correct? It's not in the statute. Exactly. The statute requires embedding in the Advisory Committee. The regs require embedding in the subgroup, correct? That's exactly right. It's a policy choice made by the government. So there will always be a DFO at these meetings of subsidiary staffing groups. And so all of the arguments we just went through with regards to the presence of this officer at the meetings of the Joint Advisory Committee are just replicated there. Again, there's the presumption of regularity that the agency official... or DFO, designated federal official, to both the Advisory Committee and the subgroups. But that person does not have to be an officer of the federal government. Is that correct? I don't see anything in the regs or the statute that has that as a requirement. No, Your Honor. So you could appoint as a DFO a mere employee of the federal government, correct? That's correct, Your Honor, yes. Here, again, I apologize. Was there a further question? No, you can proceed. So here, the reason this person was appointed as the relevant federal officer is because of the wide-ranging issues implicated by this Advisory Committee. And this is not some kind of unusual one-off situation, as plaintiff would make it seem. The person we're talking about, Mr. Elwell, also served as a designated federal officer for what's called the Next Gen Advisory Committee. And the reason he served in that role there was also because of the wide-ranging issues that are implicated there. And that's a salutary practice. I mean, it would be quite a difficult thing for these subsidiary groups if they were charged with thinking through blue-sky issues related to nearly all of FAA's lines of business. But when they had questions that they wanted to ask the agency, they could only go to a lower-level employee with a more siloed view and had no opportunity to go to a more senior person. And also, the statute makes no distinction between whether the designated federal officer would be senior or junior. And nor does the presumption of regularity get turned on its head when the person at issue is a higher-level officer. Again, you'd presume, consistent with that presumption, that someone like the deputy administrator would, when capable of wearing two hats, would wear the lawful hat and, you know, in response to questions, give truthful answers inside of these subsidiary committees but not be receiving their preliminary draft recommendations as if they were somehow final and then running some kind of sham process. I'm trying to understand your presumption of regularity argument. You don't have to assume that anything is being done improper here for the appellant's argument to make sense. I mean, the statute just says that, look, if an officer of the federal government is getting advice or recommendations from a group, then that's an advisory committee. And if that's a subgroup that's also reporting to a parent group, then maybe that advice and those recommendations get changed by the parent group and then those amended recommendations get sent on to the agency. But that doesn't mean that the officer didn't also receive advice from the subgroup. And maybe the officer will like the subgroup's advice better than the modified version that the officer received from the parent group or maybe she won't, but she's getting advice from both. And that doesn't implicate the presumption of regularity at all, does it? I actually think it does because for that argument to work, I think we would need to understand these subsidiary groups as offering advice to the officer as if it's advice, like, finally, you should do this. But in fact, what we know from all of the allegations and all the documents attached to the complaint is that these subsidiary groups were engaged in staff work, providing draft recommendations to the committee. And indeed, that's how the deputy administrator at issue here understood that person's own role, receiving final advice from the final committee. That's at page 128 of the joint appendix. I think you would have to imagine some kind of situation in which contrary to all of that, in these subsidiary groups, what actually happened was that the members of these subsidiary groups offered direct final advice to the officer who took it as that instead of offering draft preliminary thoughts to the committee with the officer understanding as much. And I think that's just crucial here. What we're talking about is mere presence in a location where draft recommendations are being made for some other entity. And there's no allegation. Just to quickly wrap up, there's no plausible allegation that the officer here somehow, contrary to all of the founding documents attached to the complaint, instead took all of that draft advice as if it were final advice and then acted on it. There's nothing about that at all. Could I ask a different question, which is your argument seems to... What is the textual hook in the definitional provision of FACA for imposing this gloss that, you know, we're only concerned about advice that flows directly? And that would seem to be a gloss on the word utilized, right? The only entity that's utilizing advice is an entity one step up the chain of command from the entity that's giving the advice. Does that... Sorry, go ahead. I think the text I would focus on would be the portion of Section 3, Paragraph 2, that talks about how, you know, the entity established or utilized must be done so, quote, in the interest of obtaining advice or recommendations for dot, dot, dot, one or more agencies or officers. It doesn't say for the advisory committee. I think that's where this directness requirement comes from. That's the text the district court focused on in Anti-Hunger Coalition. And, again, this court expressly approved of the reasoning of the district court in that case. It's a gloss on the preposition rather than the verbs. It's a gloss on for rather than utilized.  Of course, being a preposition, it's going to connect that verb to the phrase that follows after, but I would focus mostly on those prepositions and who this advice is being given to. What I'm puzzling over is that that understanding seems to me perfectly plausible with regard to the verb utilized, but maybe not with regard to the verb established where, I mean, there'd just be a factual question of who established the committee and it's perfectly possible that the agency itself would establish subcommittees and on the facts of this record, that might well be what happened, at least with regard to the subcommittee. So the established piece of the statute seems to me harder for you than the utilized piece of the statute. I'm not sure I would agree. And, again, we've disputed whether any of these superior groups were established or utilized, but the key point is the district court never had to address. I'm sorry. The charter for the DAC speaks of the subcommittee as already existing. It seems like it's pretty good evidence that the agency established the subcommittee rather than that the DAC established the subcommittee. I think it just anticipates that there's going to be one, but then, again, we cited in our brief language the effect that the subcommittee was created by the committee and then there was sort of a back and forth over the terms of reference and what would be the specific jobs of these subsidiary groups, and that was discussed in full at the Toronto Advisory Committee's first meeting and that resulted in the establishment, again, of the task groups. But, again, I don't think any of this really... The terms of reference for the DAC, which I take to be the organic document, say that the subcommittee adjunct to the DAC is, present tense, a subcommittee. So I don't know how on a motion to dismiss we could say, well, no, that organic document doesn't mean what it seems to say, which is that both the committee and the subcommittee have been established through or at least by the time of the terms of reference by the agency. Your Honor, the district court didn't ultimately resolve that question. We know that from footnote four on page five. It was 30 of the joint appendix. And that's because there's just a separate requirement about providing advice to the agency or providing advice to the advisory committee, and that separate requirement is where Plaintiff's case falters here. And so I think this court... So that second clause for the president or the agencies has to do all the work, or has to perform the limiting function you want by itself. It's not enough to build it into utilized because that doesn't solve this reserved and open question about who did the establishing. I think that's right. I think that's what National Anti-Hunger Coalition holds. It's held on the basis that this advice is being provided to an advisory committee and not to someone else. That's this distinct requirement we're talking about here. And so I think this court can affirm on the assumption that whether or not these entities were established or utilized by the government, they were not done so in order to receive advice for the agency, but rather to help these entities advise staff work for the committee. I understand. Thank you. All right. Thank you. Any more questions? Okay. Thank you, Mr. Boussa. And Madam Clerk, does Mr. Davison have any time? Counsel does not have any time remaining. All right. Mr. Davison, let's give you two minutes to answer questions. Thank you, Your Honor. If there are no questions, I can briefly respond to a couple of points from counsel's records. All right. Go ahead. Just a couple of points. One is the point that opposing counsel raised concerning the wide-ranging issues that were addressed by these subgroups that made it necessary to include the S.A. Administrator as the designated federal officer. We have no quarrel with that. Our point is simply that if that individual is in the room, as this unfiltered advice is being developed, that that demonstrates that these subgroups were themselves advisory committees. That is exactly the point of contact between the public and the government that this court said FACA is concerned with in physicians and surgeons. The second point was concerning this question of whether advice flowed directly to the S.A. Administrator. That is one way to establish that a particular committee was being utilized by the agency. We think we have done so here in our complaint, but it is not the only way. In fact, the terminology that this court has used to describe the term utilized is actual management or control. And actual management or control was surely exercised by the S.A. Administrator, wearing the hat of a designated federal officer over the proceedings of these subcommittees, because there was extensive control that is assigned to that federal officer when they are assigned to a committee. The third point was that the formal charter and the rules that are cited by opposing counsel in their briefs are not dispositive of what actually happened here. And I think we have identified multiple circumstances in which the S.A. Administrator is sitting in on, the S.A. Administrator or deputy administrator sitting in on drone advisory committee meetings heard unfiltered advice from subgroups and subcommittee before it was ever approved by the drone advisory committee. And the final point is simply that the opposing counsel characterized these subcommittees as staffing groups. That is not consistent with the regulations, which distinguish between staff and committee members. We're talking about task groups in the subcommittee that included the mayor of San Francisco, top industry executives, the university administrator. These were committee members, not lowly staff, performing research for the committee. All right. If there are no questions, then thank you, counsel. And Madam Clerk, the case is submitted.
judges: Henderson, Wilkins, Katsas